# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| American Acceptance Corporation of SC on behalf of itself and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>John Gietz, James Westbury, Sandra Black, Jesse Laintz, Joel M. Deason, Lexington County Sheriff's Department, and Sheriff Bryan "Jay" Koon in his official capacity,<br><br>                Defendants. | Civil Action No: 3:24-cv-1099-SAL |

**AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, AND INJUNCTIVE RELIEF**

In accordance with Rule 15(a)(1)(B), the named Plaintiff amends the complaint as a matter of course and, for itself and all other members of the class described herein, alleges:

INTRODUCTION

1. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." *U.S. Const. amend. XIV*.

2. This action arises out of the seizure of two motorcycles in connection with an arrest by Lexington County Sheriff's deputies, the wrongful detention of the motorcycles from the named Plaintiff, a lienholder entitled to possession, and the Defendants' failure and refusal to provide notice and an opportunity to be heard in violation of the Fifth and Fourteenth Amendments to the

United States Constitution.

3. Similar actions on behalf of owners of seized vehicles entitled to possession have percolated through the United States District Court for the Southern District of New York and the Second Circuit Court of Appeals. *See Krimstock v Kelly*, 464 F.3d 246 (2006) ("Krimstock III").

4. In *Krimstock v. Kelly*, 306 F.3d 40, 69 - 70 (2d Cir.2002) ("*Krimstock I*"), the Second Circuit held that due process requires a prompt hearing before a neutral fact-finder to test the probable validity of the deprivation *pendente lite,* including the probable cause for the initial warrantless seizure and the necessity and legitimacy of continued impoundment. (a *Krimstock* hearing).

5. In *TD Auto Finance LLC v. County of Putnam* 21 Civ. 9080 2023 WL 6295116 (2023), citing *Ford Motor Credit Co. v. NYC Police Dept.*, 503 F.3d 186 (2007), United States Magistrate Judge Andrew E. Krause held that a lienholder has, at a minimum, a protected "property interest in the present value" of [a vehicle].

## BACKGROUND

6. Lexington County Sheriff's deputies, including Gietz, seize real and personal property, including but limited to trailers, aircraft, motor vehicles, motorcycles, watergoing vessels, monies, negotiable instruments, securities and other things of value ("property"), in connection with arrests.

7. At the time of seizure, the property may be in the possession of a permissive user or other custodian.

8. The property seized is not necessarily an instrumentality of any crime.

9. Defendants Westbury, Black, and Laintz serve as custodians of the property.

10. Defendant Deason serves as general counsel for the Sheriff and maintains an office at the Lexington County Sheriff's Department (LCSD).

11. Over the last twenty (20) years, deputies have accumulated over 100 motor vehicles, motorcycles, a motorhome, a backhoe, a golf cart, a collection of bicycles, and other personal property that have been detained as arrest evidence by Westbury, Black, and Laintz under the advice and direction of Deason.

12. Many of the vehicles are parked outdoors on an unpaved lot (the primary lot), as depicted in an aerial photograph attached hereto and incorporated herein by reference as Exhibit A. The primary lot is adjacent to an evidence building at the intersection of Gibson Road and Gibson Court in Lexington, S.C., behind a chain link fence with barbed wire and a separate 6' wooden fence built from ½" x 5 ½" wood panels to screen the vehicles from public view.

13. A second uncovered and unpaved lot (the overflow lot), as depicted in an aerial photograph attached hereto and incorporated herein by reference as Exhibit B, at the end of Gibson Court, contains motor vehicles, motorcycles, a motor home, and a backhoe surrounded by a chain link fence with barbed wire.

14. The vehicles contain gasoline, oil, transmission fluid, hydraulic fluid, antifreeze, battery acid, and other such substances.

15. The only barrier between those substances and the soil are rubber seals and cardboard gaskets which degrade and leak over time.

16. Gietz, Westbury, Black, and Laintz do not notify owners or lienholders when property is seized and detained as arrest evidence, nor does Deason.

17. Neither Gietz, nor Westbury, nor Black, nor Deason provide owners or lienholders with an opportunity to be heard.

18. According to the FAQs on LCSD's website, in response to : HOW DO I GET PROPERTY BACK THAT WAS TAKEN AS EVIDENCE, the answer provided is: "Our evidence

department will contact you to set up an appointment when the item has been cleared for release. This usually occurs after the case goes to trial. Any questions should be referred to the detective handling the case." http://www.lexingtonscsheriff.com/about-us/faqs retrieved 3/21/24.

19. Without notice and an opportunity to be heard, neither owners nor lienholders have any reason to review LCSD's website nor to determine who the detective handling the case might be.

20. The seized and detained property and any evidentiary value is exposed to the elements and unnecessarily deteriorates and the property depreciates in value with the passage of time.

21. A prosecutor's right to retain material evidence necessary for trial does not mean that prosecutors can decide unilaterally that an automobile is material and its retention necessary. *Krimstock v. Kelly*, 464 F.3d 246, 256 (2006).

22. For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

23. "At the heart of *Fuentes* is the principle that it is not for law enforcement officers to decide who is entitled to possession of property. Rather, it is the domain of the courts, and citizens are to have a meaningful opportunity to be heard as to their rights before they are finally deprived of possession of property." *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998).

24. "A lienholder has, at a minimum, a protected 'property interest in the present value' of [a vehicle]." *TD Auto Finance LLC v. County of Putnam* 21 Civ. 9080 (AEK) 2023 WL 6295116 citing *Ford Motor Credit Co. v. N.Y.C. Police Dep't,* 503 F.3d 186, 191 (2d Cir 2007). The Second Circuit has made clear, in the context of vehicles seized by government actors, that "a security

4

interest is indisputably a property interest protected by the Fourteenth Amendment. A secured creditor has two rights: the contractual right to repayment of the debt owed and the property right to the collateral that secures the debt in the event of non-payment." *Id.*

25. Moreover, delays in the eventual disposition of a seized asset can amount to a deprivation of a lienholder's property interest. *Ford Motor Credit Co.*, 503 F.3d at 192 ("not only is the present value of the [lienholder's] claim diminished by the indeterminacy of its eventual realization, but [the lienholder's] property interest in the underlying asset suffers, as the vehicle depreciates over time").

## PARTIES

26. The named Plaintiff is a domestic corporation organized and existing under the laws of the State of South Carolina, maintaining its principal place of business in the County of Horry, State of South Carolina.

27. Upon information and belief, Defendant John Gietz ("Gietz") is a resident of the County of Lexington, State of South Carolina.

28. Upon information and belief, Defendant James Westbury is a resident of the County of Lexington, State of South Carolina.

29. Upon information and belief, Defendant Sandra Black is a resident of the County of Lexington, State of South Carolina.

30. Upon information and belief, Defendant Jesse Laintz is a resident of the County of Lexington, State of South Carolina.

31. Upon information and belief, Defendant Joel M. Deason is a resident of the County of Lexington, State of South Carolina.

32. LCSD is a political subdivision as defined by S.C. Code Ann. Section 15-78-30(h).

33. Sheriff Bryan "Jay" Koon (" the Sheriff") is an officer of the State of South Carolina and a resident of the County of Lexington, State of South Carolina.

34. Defendant Gietz is a deputy with LCSD with the rank of senior investigator, but is sued in his personal capacity.

35. Defendants Westbury, Black, and Laintz are deputies and custodians of property at LCSD and are sued in their personal capacity.

36. At all times herein mentioned, the Defendants acted with the advice and counsel of Deason, who is sued in his personal capacity.

## JURISDICTION

37. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 1331.

## VENUE

38. The most substantial part of the acts or omissions giving rise to these causes of action occurred and continue to occur in this Division.

## FACTS RELATING TO NAMED PLAINTIFF'S CLAIMS

39. The named Plaintiff is a creditor engaged in the business of financing motor vehicles and motorcycles ("collateral").

40. In the ordinary course of business, the named Plaintiff purchases retail installment contracts ("contracts") from sellers engaged in consumer credit sales.

41. The contracts purchased by the named Plaintiff provide it with a security interest in the collateral.

42. The contracts provide for installment payments and include additional terms regarding default and remedies.

43. The contracts provide that the Buyer will be in default if he fails to make a payment as required by the contract or if the prospect of payment, performance, or realization on the collateral is significantly impaired.

44. The remedies upon default include the right to take possession of the property by legal process or self-help.

45. On January 30, 2021, Timothy Harold Brock ("Brock") made, executed, and delivered to Capital City Cycles ("CCC") a contract for the purchase of a 2012 Harley-Davidson FLHX STREET GLIDE (VIN: 1HD1KBM19CB679464) wherein and whereby Brock promised to pay CCC the principal sum of $10,994.00 with interest at the rate of 19.00% per annum in 54 payments of $304.40 per month beginning on March 1, 2021. A copy of the contract is attached hereto and incorporated herein by reference as Exhibit C.

46. Thereafter, for value received, CCC assigned the contract to the named Plaintiff.

47. The collateral was titled in Brock's name and the named Plaintiff was listed as a lienholder with the South Carolina Department of Motor Vehicles ("SCDMV").

48. The named Plaintiff received its last payment from Brock on October 7, 2022.

49. On July 13, 2021, Shane Adam Andrzejewski ("Andrzejewski") made, executed, and delivered to CCC a contract for the purchase of a 2007 Harley-Davidson FXDB DYNA STREET BOB (VIN: 1HD1GX4147K312914) wherein and whereby Andrzejewski promised to pay CCC the principal sum of $5,656.80 with interest at the rate of 14.69% per annum in 48 payments of $156.55 per month beginning on August 12, 2021. A copy of the contract is attached hereto and incorporated herein by reference as Exhibit D.

50. Thereafter, CCC assigned the contract to the named Plaintiff.

51. The property was titled in Andrzejewski's name and the named Plaintiff was listed

7

as a lienholder with the South Carolina Department of Motor Vehicles ("SCDMV").

52.  The named Plaintiff received its last payment from Andrzejewski on November 1, 2022.

53.  Upon information and belief, on or about October 9, 2022, the motorcycles were seized as arrest evidence by the Defendants.

54.  The named Plaintiff, an innocent lienholder, took no part in any activity giving rise to the seizure.

55.  The seizure of the property constituted an event of default under the contracts entitling the named Plaintiff to remedies including possession.

56.  Upon information and belief, the Defendants routinely access the ownership and lienholder records of SCDMV in the normal course of business in connection with investigations and knew or should have known of the named Plaintiff's interest in the collateral.

57.  Notwithstanding record notice of its of liens, the Defendants failed to notify the named Plaintiff of the seizure.

58.  The named Plaintiff subsequently learned of the seizure fortuitously through the news media.

59.  The named Plaintiff's Vice President of Operations, Jon Horne ("Horne") contacted Laintz on or about December 20, 2022 who advised that it would be several years before the named Plaintiff could recover the collateral.

60.  Horne followed up with Laintz by email on December 27, 2022, who then sent an email to Westbury and Black asking if they could "assist in this matter" and asking them to "handle how is appropriate." (Exhibit E).

61.  Appropriate handling would have included notice and an opportunity to be heard.

62. Neither Westbury nor Black provided either notice or an opportunity to be heard.

63. On December 29, 2022, an informal request for an incident report was made to the LCSD (Exhibit F).

64. Twenty Two days later, LCSD referred the named Plaintiff to its FOIA department. (Exhibit G).

65. On January 27, 2023, the named Plaintiff submitted a formal FOIA request, a copy of which is attached hereto and incorporated herein by reference as Exhibit H.

66. On January 30, 2023, the named Plaintiff filed and served a summons and complaint for claim and delivery regarding the Brock motorcycle (Case No. 2023-CP-32-0304) and a summons and complaint for claim and delivery regarding the Andrzejewski motorcycle (Case No. 2023-CP-32-0302) in accordance with *Floyd v. Burden*, 226 S.C. 512, 85 S.E.2d 512 (1955).

67. On February 9, 2023, Deason acknowledged that LCSD was in possession of the motorcycles, represented that he was "working to release the bikes", requested dismissal of the complaints under veiled threats of sanctions under Rule 11, SCRCP and the South Carolina Frivolous Civil Proceedings Sanctions Act, and declined to respond to the FOIA request. (Exhibits I and J).

68. The named Plaintiff instead offered Deason an extension of time based upon his representation that the collateral would be released in 30-45 days and took no further action. (Exhibit K).

69. On the day before the extension expired, Deason advised that "the prosecutor had changed his mind and asked him to advocate to hold on to [the collateral] after initially saying we could let them go." (Exhibit L).

70. With a supporting affidavit from Gietz, purporting to have personal knowledge, a

9

copy of which is attached hereto and incorporated herein by reference as Exhibit M, Deason filed motions to dismiss for insufficiency of process, that he had drafted while he was supposedly "working to release the bikes."

71. These matters came before the Honorable Clifton Newman on July 17, 2023.

72. Judge Newman granted the Sheriff's motions with leave to perfect service and requested a proposed order from Deason. (Exhibit N).

73. The named Plaintiff promptly served the Attorney General in accordance with Judge Newman's ruling.

74. Notwithstanding Judge Newman's ruling, Deason simply submitted an Order Granting Sheriff's Motions To Dismiss and Judge Newman inadvertently signed it.

75. The named Plaintiff promptly filed a motion to alter or amend.

76. Deason submitted a memorandum in opposition.

77. Ultimately, Judge Newman granted the named Plaintiff's motion to alter or amend and filed an order dated December 11, 2023.

78. The Defendants have failed and refused and continue to fail and refuse to surrender possession of the motorcycles.

79. LCSD has failed and refused and continues to fail and refuse to respond to the Plaintiff's FOIA request.

80. In addition to the named Plaintiff's collateral, the Defendants have more than one hundred (100) cars, trucks, motorcycles, a motorhome, a backhoe, a golf cart, a collection of bicycles, and other valuables in their possession which were seized as arrest evidence over the last twenty (20) years.

81. The Defendants have failed and refused and continue to fail and refuse to provide

notice and an opportunity to be heard to all owners and lienholders of personal property ("property") thus seized and detained.

82. The property continues to depreciate with the passage of time and exposure to the elements.

83. No one benefits from the maintenance of two junk yards on public property.

## CLASS ACTION ALLEGATIONS

84. This action is brought by the named Plaintiff as a class action, on its own behalf and on behalf of all others similarly situated, under the provisions of Rule 23(a) and Rule 23(b) in that prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants; adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; the Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole; and that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

85. The class so represented by the named Plaintiff in this action, and of which the named Plaintiff is itself a member, consists of all owners and secured lenders entitled to possession of personal property seized as arrest evidence and currently detained by the Defendants without a prompt opportunity to challenge the probable validity of and justification for that deprivation under the Fifth and Fourteenth Amendments to the United States Constitution.

86. The exact number of members of the class identified above is not known, but it is estimated that there are not less than one hundred (100) members. The class is so numerous that joinder of members in this action is impracticable.

87. There are common questions of law and fact involved in this action that affect the rights of each member of the class and the relief sought is common to the entire class, namely the declaratory and injunctive relief and damages sought herein.

88. The claims of the named Plaintiff, who is a representative of the class, are typical of the claims of the class, in that the claims of all members of the class, including the named Plaintiff, depends on a showing of the acts or omissions of the Defendants giving rise to the right of the named Plaintiff to the relief sought. There is no conflict as between the named Plaintiff and other members of the class with respect to this action, or with the claims for relief set forth in this amended complaint.

89. The named Plaintiff is the representative party for the class, and is able to, and will fairly and adequately protect the interests of the class. The attorneys for the named Plaintiff are experienced and capable in litigation in the field of business disputes and have successfully represented claimants in other litigation of this nature. Of the attorneys designated as counsel for the named Plaintiff, J. Gregory Studemeyer and J. Bradley Studemeyer, will actively conduct and be responsible for the prosecution of this case.

90. This action is properly maintained as a class action.

FOR A FIRST CAUSE OF ACTION
(DECLARATORY JUDGMENT)
(as to all Defendants)

91. Each and every previous allegation is realleged herein in the same manner and to the same extent as if repeated.

92. This cause of action is brought pursuant to 28 U.S.C. § 2201.

93. The issues herein are of such public importance as to require their resolution for future guidance.

94. As set forth herein, a real or actual controversy exists between the class and the Defendants.

95. At all times herein mentioned, the class had and still has a protected property interest in the property seized and detained without notice and an opportunity to be heard.

96. The Defendants have no published policy for addressing the rights of owners and lienholders to property seized as arrest evidence.

97. It is the practice and custom of the Defendants to ignore the rights of owners and lienholders to notice and an opportunity to be heard.

98. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994, 32 L.Ed.2de 556 (1972).

99. The Defendants have had ample opportunity to photograph, test, measure, analyze and otherwise process the property.

100. The Defendants' attempts to suppress the named Plaintiff's efforts to inquire about the status of its collateral and to secure possession of it with threats of sanctions demonstrate conscious indifference to the rights of the named Plaintiff and the class.

101. The named Plaintiff is informed and believes that the Defendants' right to maintain evidence necessary for trial does not mean that they can decide unilaterally that property is material and its retention necessary.

102. The Plaintiff is informed and believes that due process requires a prompt hearing before a neutral fact-finder to test the probable validity of the deprivation *pendente lite*, including the probable cause for the initial seizure and necessity and legitimacy of continued impoundment. See *Krimstock v. Kelly*, 464 F.3d 246 (2006); *Santander Consumer USA, Inc. v. County of Suffolk*, 2021 WL 4489574; and *TD Auto Finance LLC v. County of Putnam*, 2023 WL 6295116.

103. Based upon the foregoing, the class is informed and believes that it is entitled to a declaration that the Defendants' policies, practices, and customs of impounding vehicles and other property that has been seized in connection with arrests without providing prompt notice to owners or lienholders with interests in the property and without providing those interested parties with an opportunity to be heard at any time in connection with the seizure or potential release of the property, violates the protection against deprivations of property without due process of law enshrined in the Fourteenth Amendment to the U.S. Constitution. *TD Auto Finance*, supra. at 14.

FOR A SECOND CAUSE OF ACTION
(PERMANENT INJUNCTION)
(as to all Defendants)

104. Each and every previous allegation is realleged herein in the same manner and to the same extent as if repeated.

105. As set forth above, the class has suffered and continues to suffer irreparable harm.

106. Remedies at law, such as monetary damages, are inadequate to compensate for the harm.

107. The class has no adequate remedy at law.

108. Considering the balance of hardships between the class and the Defendants, a remedy in equity is warranted.

109. The public interest would not be disserved by a permanent injunction.

110. Based upon the foregoing the class is informed and believes that it is entitled to permanent injunctive relief to prohibit further violations of the rights of citizens to due process in connection with seizures and detention of personal property incident to arrests.

FOR A THIRD CAUSE OF ACTION
(42 U.S.C. Section 1983)
(as to Gietz, Westbury, Black, Laintz, and Deason)

111. Each and every previous allegation is realleged herein in the same manner and to the same extent as if repeated.

112. When determining whether the law is clearly established, courts attribute to defendants "knowledge of constitutional developments at the time of the alleged constitutional violation, including all available case law. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 477 (9th Cir. 1991).

113. The right to Due Process is a clearly established right.

114. At all times herein mentioned, Gietz, Black, and Laintz served in supervisory capacities and implicitly authorized, approved or knowingly acquiesced in the detention of the property and failed to provide the class with notice and an opportunity to be heard.

115. Gietz, Westbury, Black, Laintz, and Deason violated the right of due process to the class.

116. The conduct at issue was committed by persons acting under color of state law and deprived the class of rights, privileges, or immunities secured by the Constitution or laws of the United States.

117. The detentions described above are so consistent and widespread that, although not expressly authorized, constitute a custom or usage of which a supervising policymaker must have been aware.

118. The failure of the Defendants to provide adequate training or supervision to subordinates amounts to deliberate indifference to the rights of those who come into contact with the Defendants' employees.

119. The policies or customs aforesaid caused the class to be subjected to a denial of a constitutional right.

120. Based upon the foregoing, the class is informed and believes that it is entitled to at least nominal damages as well as compensatory damages for depreciation in the value of the property for the duration of the unconstitutional detention and a reasonable award of attorney's fees and costs.

FOR A FOURTH CAUSE OF ACTION
(Claim and Delivery)
(as to all Defendants)

121. Each and every previous allegation is realleged herein in the same manner and to the same extent as if repeated.

122. As set forth herein, the class is entitled to possession of the property.

123. The Defendants have failed and refused and continue to fail and refuse to surrender the property to the class.

124. The class is informed and believes that it is entitled to an order pursuant to S.C. Code Ann. Section 15-69-210 requiring the Defendants to surrender possession of the property to the class and for damages for the detention.

WHEREFORE, the class prays for the following relief:

A. A declaration that the Defendants' policies, practices, and customs of impounding vehicles and other property that has been seized in connection with arrests without providing prompt notice to owners or lienholders with interests in the property and without providing those

interested parties with an opportunity to be heard at any time in connection with the seizure or potential release of the property, violates the protection against deprivations of property without due process of law enshrined in the Fourteenth Amendment to the U.S. Constitution. *TD Auto Finance*, supra. at 14.

    B.  An order enjoining the Defendants from further seizure and detention without providing prompt notice and an opportunity to heard in accordance with the Due Process Clause;

    C.  An order requiring the Defendants to comply with the Freedom of Information Act;

    D.  An award of both nominal and compensatory damages for depreciation;

    E.  For an order for the recovery of possession of the property and damages for the detention;

    F.  For a reasonable award of attorney's fees and costs pursuant to S.C. Code Ann. 15-36-10, et seq., 15-77-300, 30-4-100, and 42 U.S.C. § 1988; and

    G.  For such other and further relief as the Court may deem just and proper.

        STUDEMEYER LAW FIRM, P.C.

        By: s/J. Gregory Studemeyer
        J. Gregory Studemeyer
        SC Bar #5416
        J. Bradley Studemeyer
        SC Bar #105864
        7478 Carlisle Street
        Post Office Box 1014
        Irmo, South Carolina 29063
        803-393-4399
        greg@studemeyerlawfirm.com
        jb@studemeyerlawfirm.com
        Attorneys for the Plaintiff

Irmo, South Carolina
March 21, 2024